ROBERTS, J.,
for the Court:
¶ 1. The Union County Youth Court found that thirteen-year-old S.M.K.S.[1] was a delinquent child because he resisted arrest for disorderly conduct. S.M.K.S. appeals, and claims there was insufficient evidence for the youth court’s decision. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. The events that led to S.M.KS.’s appeal occurred on April 29, 2011, in New Albany, Mississippi. Officers with the New Albany Police Department received a report that shots had been fired in the vicinity of Madison Street or Garfield Street. The report also indicated that the suspects had been driving a tan Oldsmobile Cutlass. When Sergeant Ben Kent heard the radio dispatch, he was alone in his patrol car. Sergeant Kent immediately activated his blue lights and his siren, and drove toward a set of duplex apartments on Cleveland Street, which is in the vicinity of both Madison Street and Garfield Street. Sergeant Kent knew that someone who lived in one of the duplex apartments drove a tan Cutlass. When Sergeant Kent arrived at the duplex, he found the tan Cutlass and “several people in the yard.”
¶ 3. Based on the report that someone had been firing a weapon, Sergeant Kent got out of his patrol car and drew his pistol. He focused his attention on S.M.K.S.’s sixteen-year-old brother. S.M.K.S. was in Sergeant Kent’s peripheral vision. Sergeant Kent sought to ensure that neither S.M.K.S. nor S.M.K.S.’s older brother was armed. To that end, Sergeant Kent told S.M.K.S. and S.M.KS.’s brother to display their hands. Neither S.M.K.S. nor S.M.KS.’s brother complied. Next, Sergeant Kent told them to put them hands on the car. S.M.K.S.’s older brother started walking to the front porch of one of the duplex apartments. According to Sergeant Kent, S.M.K.S. said, “I’m not putting my hands on the car.”
¶ 4. Sergeant Kent testified that he hoi-, stered his pistol and “grabbed [S.M.KS.’s] *878 right wrist with [his] right hand, and [he] used the straight[-]arm bar to put [S.M.K.S.] over the hood of the car to gain his compliance so that [Sergeant Kent] could pat [S.M.K.S.] down to check whether ... he had weapons.” Other members of the New Albany Police Department arrived around that time. Officer Gabe Wilson drove up to the scene seconds before Officer Brent Baker and Officer Stewart Dodds arrived. Meanwhile, S.M.K.S. continued to struggle with Sergeant Kent. According to Officer Wilson, S.M.K.S. was “doing everything [he could] to keep from putting his hands behind [his back]. He’s kicking. He’s yelling. He’s punching. He’s doing whatever he can to try to keep the officers from taking control.” Officer Baker and Officer Wilson took S.M.K.S. to the ground. Officer Baker used his taser on S.M.K.S. S.M.K.S. stopped struggling, and Officer Wilson handcuffed him and put him in a patrol car. Sergeant Kent turned his attention toward S.M.K.S.’s brother while Officer Dodds attempted to keep onlookers away from the other officers.
¶ 5. According to the officers, “another incident broke out” after S.M.K.S. was tased. Officer Wilson described the scene as “mass chaos.” According to Officer Dodds, it was the “most hostile environment” he had experienced during his four years as a police officer. Additional officers responded, including Lieutenant Mark Golding and Detective Chris Robertson. Ultimately,. officers took S.M.K.S., S.M.KS.’s brother, and an adult into custody.
¶ 6. In May 2011, the Union County prosecuting attorney filed a petition alleging that S.M.K.S. resisted arrest in violation of Mississippi Code Annotated section 97-9-73 (Rev.2006) “by refusing to put his hands on the [patrol] car and struggling with the officers.” On July 20, 2012, the youth court conducted a hearing on the prosecution’s petition. Sergeant Kent, Officer Wilson, Officer Baker, Officer Dodds, Officer Jason McDaniel, Lieutenant Golding, and Detective Robertson all testified regarding their involvement in the events that led to S.M.K.S.’s arrest. Latrina By-num testified for S.M.K.S. Bynum lived in the duplex apartment next to S.M.K.S.’s mother. Bynum testified that S.M.K.S. complied with Sergeant Kent’s instructions to put his hands on the car. Bynum further testified that S.M.K.S. did not struggle with Sergeant Kent. According to By-num, Sergeant Kent behaved aggressively from the moment he arrived at the duplex apartments. Bynum also testified that Sergeant Kent immediately told S.M.K.S., “You MF, I told you I was going to get you.”
¶ 7. The youth court found that S.M.K.S. was a delinquent child based on his resisting arrest.[2] The youth court placed S.M.K.S. on probation for six months and ordered that he seek counseling for anger management. S.M.K.S. appeals.
STANDARD OF REVIEW
¶ 8. We apply the following limited standard of review in youth-court cases:
We consider all the evidence presented to the youth court in the light most favorable to the State. If the evidence is such that, beyond a reasonable doubt, reasonable [minds] could not have reached the youth court’s conclusion, we must reverse. However, if the evidence in the record supports the youth court’s adjudication, considering the reason *879 able[-]doubt standard, then we must affirm.
In re L.C.A., 938 So.2d 300, 303 (¶ 6) (Miss.Ct.App.2006) (internal citations omitted).
ANALYSIS
¶ 9. S.M.K.S. claims that the youth court erred when it found that he was a delinquent child. According to S.M.K.S., there was insufficient evidence for the youth court to find that he resisted arrest. S.M.K.S. also argues that there was no probable cause for Sergeant Kent’s initial arrest.
¶ 10. The County’s petition alleged that S.M.K.S. resisted arrest in violation of section 97-9-73. To prove that S.M.K.S. resisted arrest, there must have been sufficient evidence that (1) Sergeant Kent was attempting a lawful arrest, and (2) S.M.K.S. resisted or obstructed his arrest by force, threats, violence, or any other means. See id. “The offense of resisting arrest presupposes a lawful arrest. A person has a right to use reasonable force to resist an unlawful arrest.” Chambers v. State, 973 So.2d 266, 271 (¶ 13) (Miss.Ct.App.2007). “Under certain circumstances, a law[-]enforcement officer may rely on probable cause to place a child into custody.” In re L.C.A., 938 So.2d at 304 (¶ 9). “[A] law[-]enforeement officer may take a child in custody if ... grounds exist for the arrest of an adult in identical circumstances.” Miss.Code Ann. § 43-21-303(l)(a)(i) (Rev.2009).
 ¶ 11. With utmost respect, we disagree with the dissent’s conclusion that it was unreasonable for Sergeant Kent to suspect that S.M.K.S. could have been armed. Sergeant Kent had heard recent reports from dispatch that shots had just been fired from a tan Cutlass. Sergeant Kent knew that someone who owned a tan Cutlass lived at a duplex apartment in the vicinity of the area where the gunshots were reported. When Sergeant Kent arrived at the duplex, he found S.M.K.S. and others standing very close to a tan Cutlass. It was lawful for Sergeant Kent to approach S.M.K.S. for the purpose of investigating the report that shots had been fired from the tan Cutlass. “[A] police officer may approach an individual for purposes of investigating possible criminal behavior, even in the absence of probable cause to arrest.” McFarlin v. State, 883 So.2d 594, 598 (¶ 9) (Miss.Ct.App.2004) (citing Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). We also respectfully disagree with the dissent’s conclusion that Sergeant Kent “immediately effectuated a seizure” of S.M.K.S. when Sergeant Kent first approached him. Simply being armed, in and of itself, is not the equivalent of a seizure; particularly when an officer has reason to believe that shots had been fired. Because Sergeant Kent was investigating a report that shots had just been fired from a car that matched the description of the car that S.M.K.S. was near, it was reasonable for Sergeant Kent to conduct a pat-down search for his own safety and ensure that S.M.K.S. was not armed. When it is reasonable for a police officer to believe that someone “may be armed and dangerous, the officer may conduct a very limited search of the outer clothing in order to determine whether the individual is, in fact, armed.” Id. But before Sergeant Kent approached S.M.K.S. to conduct a pat-down search, Sergeant Kent instructed him and his brother to display their hands. They both refused to do so. Sergeant Kent then ordered S.M.K.S. to put his hands on the car. Again, S.M.K.S. refused to comply. Under the circumstances, Sergeant Kent had the authority to arrest S.M.K.S. for violating Mississippi Code Annotated section 97 — 35—7(l)(i) (Rev.2006), which provides that one is guilty of committing a breach of *880 the peace under the following circumstances:
Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law[-]enforcement officer, having the authority to then and there arrest any person for a violation of the law, to ... [a]ct or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command.
Sergeant Kent had the authority to temporarily detain S.M.KS. and his older brother to further investigate the report that someone had fired shots from a tan Cutlass. He also had the authority to pat down people near the tan Cutlass to ensure that none of them were armed. Because S.M.K.S. refused to comply with Sergeant Kent’s reasonable instructions, Sergeant Kent had the authority to arrest S.M.KS.
¶ 12. Multiple law-enforcement officers testified that S.M.K.S. resisted arrest. Although there were inconsistencies regarding which officers actually took S.M.K.S. to the ground, and Bynum testified that S.M.K.S. did not resist arrest, it was within the youth-court judge’s discretion to weigh the evidence. With the benefit of hindsight, it is possible that the events that led to S.M.KS.’s arrest may have been avoided if Sergeant Kent had taken a different approach and immediately announced that he had received a report that shots had been fired from a tan Cutlass. But our standard of review does not involve second-guessing a police officer’s investigation of reports that at least one person had been shooting a firearm from a car that matched the description of the car that S.M.K.S. was near. Instead, we are required to view the evidence in the light most favorable to the State and ascertain whether the youth-court judge abused his discretion when he found S.M.K.S. had resisted arrest for disorderly conduct. We find that the youth-court judge did not abuse his discretion when he found that S.M.K.S. qualified as a delinquent child.[3] Consequently, we find no merit to this issue.
¶ 13. THE JUDGMENT OF THE UNION COUNTY YOUTH COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J„ CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY ISHEE, J.

. "Only the initials of the child shall appear on the record on appeal.” Miss.Code Ann. § 43-21-651(1) (Rev.2009).

. During closing arguments, the prosecutor asked the youth court to “take judicial notice that [S.M.K.S.’s] brother has already admitted to shooting the gun in this case[,] and [he] has already been adjudicated] delinquent for shooting the gun.’’

. A delinquent child is a child over ten years old who has committed a delinquent act. Miss.Code Ann. § 43-21-105(0 (Supp.2013). A child commits a delinquent act when he or she behaves in a way that would qualify "as a crime under state or federal law, or municipal or county ordinance.” Miss.Code Ann. § 43-21 — 105(j) (Supp.2013).