ON WRIT OF CERTIORARI

LAMAR, Justice,
for the Court:
¶ 1. The Court of Appeals affirmed the Union County Youth Court’s adjudication of thirteen-year-old S.S. as a delinquent for resisting arrest, and we granted S.S.’s petition for certiorari. After review, we find no error in the Court of Appeals’ conclusion, and we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On April 29, 2011, the New Albany Police Department received a report that shots had been fired in the vicinity of Madison Street, Garfield Street, or Hayes Street. All of these streets intersected and were “right there together on the north side of town.” Officer Ben Kent heard the report — which he classified as a “serious situation” — activated his blue lights and siren and headed to the north side of town. On the way, the report was updated to state that the suspects were driving a tan Cutlass. When Officer Kent heard this new information, he headed to Cleveland Street, because he “knew that there was a tan Cutlass that stayed on Cleveland Street at the duplex apartments.”
¶ 3. When Officer Kent arrived at the duplex, he saw the tan Cutlass and an SUV parked in front, and he noticed “several people in the yard.” Officer Kent stopped his car in order to “keep the SUV in between [him] and the people in the yard to give [himself] a little bit of cover.” Officer Kent got out of his patrol car and drew his weapon. He focused his attention on S.S.’s sixteen-year-old brother, D.S., but was trying to keep S.S. in his peripheral vision. Officer Kent began giving them orders to “let [him] see their hands.” Officer Kent testified that he continued to approach the two of them, continued to order them to show their hands, and then he told them to put-their hands on the car. When Officer Kent ordered them to put their hands on the car, S.S. stated “I’m not putting my hands on the car.”
¶ 4. At that point, Officer Kent testified that he holstered his pistol and put S.S. “over the hood-of the car to gain [S.S.’s] compliance so that [he] could pat [S.S.] down to check whether or not he had weapons.” Other members of the New Albany Police Department arrived around that time. S.S. continued to struggle with Officer Kent. According to Officer Gabe Wilson, S.S. was “doing everything [he could] to keep from putting his hands behind [his back]. He’s kicking. He’s yelling. He’s punching. He’s doing whatever *749 he can to try to keep the officers from taking control.” Officer Brent Baker eventually tased S.S., and he stopped struggling. Officer Wilson handcuffed S.S. and put him in a patrol car.
¶ 5. Officer Kent then turned his attention toward D.S., while Officer Stewart Dodds attempted to keep onlookers away from the other officers. Officer Dodds testified that he noticed a “large crowd,” and that there were two other individuals near the car. He kept his attention on these individuals because they were “kind of trying to run off,” and the officers “didn’t know where the gun was at [that] time.” Officer Wilson described the scene as “mass chaos.” He described how the officers tried to “get the scene secure” and as “safe as possible,” because there were “some smaller children in the area” and some “elderly people.” And, according to Officer Dodds, it was the “most hostile environment” he had experienced during his four years as a police officer.
¶ 6. In May 2011, the Union County prosecuting attorney filed a petition alleging that S.S. should be adjudicated a delinquent child for resisting arrest, in violation of Mississippi Code Section 97-9-73. On July 20, 2012, the Youth Court conducted a hearing on the State’s petition. Officers Kent, Wilson, Baker, Dodds, and several other officers testified regarding their involvement in the events that led to S.S.’s arrest, and S.S. presented one witness in his defense. The Youth Court ultimately adjudicated S.S. a delinquent child for “committing the act of arrest: resisting or obstructing in violation of § 97-9-73 ...” S.S. appealed, and we assigned his case the Court of Appeals, which affirmed the Youth Court. We then granted S.S.’s petition for certiorari.
STANDARD OF REVIEW
¶ 7. The Court of Appeals correctly stated that the standard of review for youth-court matters is the reasonable-doubt standard:
We consider all the evidence presented to the youth court in the light most favorable to the State. If the evidence is such that, beyond a reasonable doubt, reasonable [minds] could not have reached the youth court’s conclusion, we must reverse. However, if the evidence in the record supports the youth court’s adjudication, considering the reasonable doubt standard, then we must affirm.
In re S.M.K.S., No.2012-CA-01237-COA, 155 So.3d 876, 878-79, 2014 WL 43968, *2 (Miss.Ct.App. Jan. 7, 2014) (quoting In re L.C.A., 938 So.2d 300, 303 (Miss.Ct.App.2006)); see also In re D.K.L., 652 So.2d 184, 189 (Miss.1995).
ANALYSIS
¶ 8. In his brief before the Court of Appeals, S.S. stated that the “sole” issue on appeal is:
Whether Officer Ben Kent lacked sufficient probable cause thereby rendering the arrest of S.S. unlawful such that the prosecution could not prove the essential element of “lawfulness” necessary to adjudicate S.S. delinquent on the grounds of resisting arrest as a matter of law.
We interpret S.S.’s argument as follows: Officer Kent did not have “probable cause” to arrest S.S. for anything; thus Officer Kent’s actions in arresting S.S. were unlawful, and one cannot be properly charged and convicted of resisting an unlawful arrest.[1] We address these arguments in turn.
*750 ¶ 9. S.S. argues that Officer Kent had no probable cause to arrest him for firing the shots. First, we find nothing in the record to support S.S.’s assertion that he was being placed under arrest for firing the shots. Second, we find that S.S.’s probable-cause argument is a red herring. It is true that the Youth Court petition does not cite the underlying crime for which S.S. allegedly was resisting arrest. But the Juvenile Detention Report states that S.S. was charged with “disorderly conduct,”[2] along with resisting arrest. So we cannot agree with S.S.’s argument that Officer Kent had to have probable cause to arrest him for discharging the weapon in order for his arrest to be lawful.
¶ 10. Rather, we must determine if Officer Kent’s arrest of S.S. for disorderly conduct was lawful. We first note that, because Officer Kent personally observed S.S. committing what he perceived to be a breach of the peace — the underlying offense for which S.S. was arrested — the requirement of probable cause was not implicated. See, e.g., Bird v. State, 154 Miss. 493, 122 So. 539, 540 (1929) (“It is well settled that an officer may make an arrest for a misdemeanor committed in his presence without a warrant....”); see also Miss.Code Ann. § 99-3-7(1) (Rev. 2007) (“An officer or private person may arrest any person without warrant, for ... a breach of the peace threatened or attempted in his presence.... ”).
¶ 11. Second, we find that Officer Kent’s actions in arresting S.S. for disorderly conduct were lawful under the facts of this case. Officer Kent — in response to a report of shots fired and to what he classified as a “serious situation” — testified that he drew his weapon and approached S.S. and his older brother D.S. and began ordering them to show their hands. Officer Kent testified that he continued to approach the two of them, continued to order them to show their hands, and then told them to put their hands on the car. When Officer Kent ordered them to put their hands on the car, S.S. stated “I’m not putting my hands on the car.”
¶ 12. We find that S.S.’s refusal to “promptly comply with or obey a request, command, or order of’ Officer Kent — “a law enforcement officer, having the authority to ... arrest any person for a violation of the law” — constituted a circumstance “which may cause or occasion a breach of the peace,” as two of the other officers at the scene described the situation as “very hostile” and as “mass chaos.” So Officer Kent, as a New Albany police officer, lawfully arrested S.S. for disorderly conduct when S.S. failed to obey Kent’s commands to show his hands or to place his hands on the car under circumstances that could lead to a breach of the peace, which is all that is required under the disorderly conduct statute.
¶ 13. Finally, the evidence introduced at the delinquency hearing certainly shows *751 that S.S. resisted arrest, and S.S. does not appear to deny that he did.[3] Officer Kent testified that, after S.S. refused to place his hands on the car, he holstered his weapon and put S.S. “over the hood of the car to gain [S.S.’s] compliance so that [he] could pat [S.S.] down to check whether or not he had weapons.” Other officers had arrived on the scene by that time, and S.S. continued to resist being patted down. S.S. struggled and would not put his arms behind his back, and some of the other officers ultimately tased S.S. to gain compliance.
¶ 14. So, in sum, we find that sufficient evidence exists to support the Union County Youth Court’s adjudication of S.S. as a delinquent. Officer Kent personally observed S.S. refuse to comply with his orders under circumstances that “may cause or occasion a breach of the peace.” He was therefore authorized by statute to arrest S.S. for disorderly conduct. And because S.S. resisted that lawful arrest, he was properly adjudicated a delinquent. We cannot say, after viewing all the evidence in the light most favorable to the State, that “reasonable minds could not have reached the youth court’s conclusion beyond a reasonable doubt,” and we therefore affirm the decision of the Court of Appeals and the Union County Youth Court.
¶ 15. AFFIRMED.
WALLER, C.J., RANDOLPH, P.J., PIERCE AND COLEMAN, JJ., CONCUR. WALLER, C.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND PIERCE, J.; JOINED IN PART BY LAMAR AND COLEMAN, JJ. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, CHANDLER AND KING, JJ. CHANDLER, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J.

. "It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest ... by any state, local or federal law enforcement officer, and any person or persons so doing shall be guilty of a misdemean- *750 or....” Miss.Code Ann. § 97-9-73 (Rev. 2014) (emphasis added).

. The disorderly conduct statute states, in pertinent part:
Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to: (i) Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct, which is made a misdemeanor....
Miss.Code Ann. § 97 — 35—7(i)(i) (Rev. 2014) (emphasis added).

. S.S. challenges only whether he was resisting a "lawful” arrest.