# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-SA-00069-COA

IN THE INTEREST OF L.T., K.T., E.T., AND S.T.: MISSISSIPPI DEPARTMENT OF CHILD PROTECTION SERVICES         APPELLANT

v.

YOUTH COURT OF WARREN COUNTY, MISSISSIPPI         APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/04/2020 |
| TRIAL JUDGE: | HON. JOHN S. PRICE JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY YOUTH COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL BY: NATHAN HODGES McINTOSH DURAN DEANGELO DAVIS |
| ATTORNEY FOR APPELLEE: | NO APPEARANCE |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND RENDERED - 03/01/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., McCARTY AND SMITH, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. The Youth Court of Warren County placed four minors—L.T., K.T., E.T., and S.T.—under the custody of the Mississippi Department of Child Protection Services (CPS). The children were physically placed with their maternal aunt and guardian, "Jane Doe," in Florida.[1] On August 21, 2020, a Florida case manager, Scott Sullivan, reported allegations

---

[1] Since the record is sealed and confidential, initials and a pseudonym have been used to protect the identities of the children and their guardian.

of abuse by the guardian, Doe.[2]  These allegations were sent to the Warren County Youth Court's intake unit, which conducted a preliminary investigation.  On September 1, 2020, the youth court entered intake orders for each child, adjudging them to be abused children and referring the matter for formal handling.  The court also appointed an attorney, Leigh Ann Cade, and a guardian ad litem (GAL) for the children.

¶2.    A shelter hearing was held before the youth court judge on September 4.  Present at the hearing were Ken Harper, the county prosecutor; Tomica Stowers, the CPS representative; Cade, the children's attorney; Doe's attorney; and the GAL.  Stowers told the court that L.T., the eldest child, had reported to Sullivan that Doe had slapped her and called her inappropriate names.  It was also reported that Doe was spanking the children with belts, leaving marks on them, and that Doe was distressed about her financial situation and "scream[ed] and holler[ed] at the kids."  Stowers noted that Doe "was just unable to even communicate with me without screaming or hollering."

¶3.    Doe's attorney responded that Doe, a self-employed business owner, was indeed having financial difficulties due to the recent COVID-19 pandemic.  Although Doe admitted to him that she had spanked the children, her attorney claimed L.T. only made the other allegations because she was angry at her aunt for taking her cell phone away from her.  Cade also noted to the court that Doe's business had closed because of COVID-19 and that the children had been "cooped up in the house since March."  The youth court judge contacted a representative with the Florida Department of Children and Families (FDCF) via telephone.

---

[2] The record states that Sullivan works for Florida Family's First Network, which works with licensed foster parents, not the Florida Department of Children and Families.

In open court, the FDCF representative said that she had seen nothing in the home requiring the youth court's action. The judge, being familiar with the case history, remarked that Doe had always gone "above and beyond the call of duty to her nieces and nephews" and expressed an understanding that recent events related to the pandemic were contributing to Doe's stress and problems. The judge concluded that he found nothing that "gives me any concern about the welfare of these children." A "Shelter Order" was filed on September 14, 2020, in which the youth court ruled that the minor children "shall remain in the custody of [CPS] and physical placement remain with [their] maternal aunt, [Doe]." CPS and the GAL were also ordered to "investigate the allegations made to FDC[F]."

¶4.    County Prosecutor Harper filed a formal petition on behalf of the minor children on September 23, 2020, requesting that the youth court inquire into the allegations of abuse. The youth court held a hearing regarding the petition on December 2, 2020. Present at the hearing were Stowers; Lane Campbell, another county prosecutor; Cade; Doe; Doe's attorney; and the GAL. There was confusion among the parties present at the hearing as to why the petition had been filed; neither Cade nor Stowers were responsible for its filing. In fact, Cade had spoken with Sullivan, the case manager, "about dismissing the petition, and he was in agreement that it had been unsubstantiated by" the lady from the FDCF.

¶5.    The youth court thereby dismissed the petition with prejudice and concluded in its order that the petition was "utterly frivolous" and had "no basis in fact." Citing Rule 11 of the Mississippi Rules of Civil Procedure,[3] the youth court "on its own [m]otion" further

_____

[3] Rule 81(a) of the Mississippi Rules of Civil Procedure specifies that the rules "apply to all civil proceedings but are subject to limited applicability" in certain enumerated actions,

ordered CPS to pay Doe's attorney's fees and other expenses (i.e., lost wages and travel costs) in the amount of $3,506.45 with interest. CPS appeals from the judgment, arguing that because "CPS did not file a pleading or motion in the action[,] . . . Rule 11 does not apply." Alternatively, CPS asserts that the initial "report of alleged abuse was not frivolous, nor was it intended to harass or delay."

¶6.     Before addressing the merits, we note that the Appellee did not file a brief. We have two options in addressing an appellee's failure to file a brief:

> The first alternative is to take the appellee's failure to file a brief as a confession of error and reverse. This should be done when the record is complicated or of large volume and the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error. The second alternative is to disregard the appellee's error and affirm. This alternative should be used when the record can be conveniently examined and such examination reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed.

*Walker v. Walker*, 210 So. 3d 996, 998-99 (¶5) (Miss. Ct. App. 2015). Thus, we must analyze the appellant's argument to determine whether it "create[s] enough doubt in the judiciousness of the trial court's judgment that this Court cannot say with confidence that the case should be affirmed." *Id*. at 999 (¶5).

¶7.     Because it is evident from the record that the county prosecutor, not CPS, was responsible for the petition's filing, we find CPS has made out "an apparent case of error."

_____

including "proceedings pursuant to the Youth Court Law." M.R.C.P. 81(a)(3). "Statutory procedures specifically provided for each of the above proceedings shall remain in effect and shall control to the extent they may be in conflict with these rules; otherwise these rules apply." M.R.C.P. 81(a). Thus, where "the controlling statutes are silent as to a procedure, the M.R.C.P. govern." M.R.C.P. 81 advisory committee notes. Here, nothing in the statutes or the Uniform Rules of Youth Court Practice would limit the applicability of Rule 11.

4

We therefore reverse the youth court's order imposing Rule 11 sanctions against CPS. As no appellee's brief has been filed requesting sanctions against any other person or party, we render the judgment rather than remand for further consideration by the youth court.

## STANDARD OF REVIEW

¶8. This Court applies a "limited standard of review in youth-court cases," considering "all the evidence . . . in the light most favorable to the State." *S.M.K.S. v. Youth Ct. of Union Cnty.*, 155 So. 3d 876, 878 (¶8) (Miss. Ct. App. 2014) (quoting *In re L.C.A.*, 938 So. 2d 300, 303 (¶6) (Miss. Ct. App. 2006)). "If the evidence is such that, beyond a reasonable doubt, reasonable minds could not have reached the youth court's conclusion, we must reverse. However, if the evidence in the record supports the youth court's adjudication, considering the reasonable-doubt standard, then we must affirm." *Id.* at 878-79 (¶8).

## DISCUSSION

¶9. The sole issue raised on appeal is whether the youth court erred in ordering that CPS pay Doe's attorney's fees and her travel expenses. As stated, the youth court cited Rule 11 as the basis for ordering the sanctions, which provides in part:

> If *any party files a motion or pleading* which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order *such a party, or his attorney*, or both, to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees.

M.R.C.P. 11(b) (emphasis added). CPS contends that because it "did not file [the] motion or pleading in the action," the youth "court abused its discretion in assigning costs to the CPS pursuant to Rule 11." The Mississippi Supreme Court has held that "in reviewing the trial

5

judge's grant or denial of sanctions," we "employ[] an abuse of discretion standard." *Ill. Cent. Gulf R.R. Co. v. McLain*, 174 So. 3d 1279, 1284 (¶12) (Miss. 2015). The court's decision will be upheld "unless we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Id*. (quoting *Jones v. Jones*, 995 So. 2d 706, 711 (¶13) (Miss. 2008)).

¶10.    It was Harper, the county prosecutor, who filed the petition *on the minor children's behalf*, requesting that the youth court "may take such disposition as may be for the best interest and welfare" of the children. A different county prosecutor, Campbell, attended the December 2020 hearing on the petition. The CPS representative denied any knowledge of the petition's filing prior to the December hearing, explaining to the youth court, "[W]e don't file petitions." Cade, the children's attorney, also had no idea why the petition was filed. Nevertheless, the youth court judge assessed CPS with Doe's attorney's fees and expenses, concluding, "I don't think there's any question that this would fall under a Rule 11 issue with being frivolous." There were no objections to the court's ruling.

¶11.    Mississippi Code Annotated section 43-21-451 (Rev. 2015) provides that the commencement of formal proceedings in adjudicating whether a child is abused "shall be initiated by the filing of a petition . . . drafted and filed *by the youth court prosecutor*" unless otherwise designated. (Emphasis added). *See also* U.R.Y.C.P. 8(b)(5) (noting that when "an intake screening process has been conducted . . . and it appears that the child is an abused or neglected child, the youth court intake unit shall recommend to the court . . . that the matter be referred to the youth court prosecutor"). While we understand the youth court judge's

6

frustration with the "bureaucratic nightmare" that Doe was put through, the record clearly shows that the county prosecutor filed the formal petition in this case, not CPS.

¶12.    Accordingly, we find merit to CPS's claim that the youth court's imposition of sanctions under Rule 11—requiring the department to reimburse Doe for her expenses and attorney's fees—constitutes reversible error.[4]

¶13.    **REVERSED AND RENDERED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

---

[4] Because the youth court's judgment concerned the formal petition, we need not address CPS's alternate claim that its initial report to the youth court intake unit (based on Sullivan's allegations) "was not frivolous or harassment."