# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CP-00543-SCT

*R.W. AND J.R.*

*v.*

*MISSISSIPPI DEPARTMENT OF CHILD
PROTECTION SERVICES*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/12/2022 |
| TRIAL JUDGE: | HON. ROBERT KEITH MILLER |
| TRIAL COURT ATTORNEYS: | LANIE ROSA ROUSSEL |
| | V. DENISE LEE |
| | MICHAEL WILSON BRELAND |
| | VICTORIA ANN LOWERY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY YOUTH COURT |
| ATTORNEYS FOR APPELLANTS: | R.W. (PRO SE) |
| | J.R. (PRO SE) |
| ATTORNEY FOR APPELLEE: | MICHAEL WILSON BRELAND |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 10/10/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., BEAM AND ISHEE, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     R.W. and J.R. are the biological parents to twins Rachel and Joshua.[1] R.W. gave birth to the twins prematurely on May 9, 2022. That same day, R.W. and the twins tested positive for amphetamines. The Jackson County Youth Court immediately placed the children in the custody of the Mississippi Department of Child Protection Services (CPS). After an

---

[1] Initials are used for all parents, and fictitious names are used for the children. This is to protect the privacy and anonymity of the minor children involved.

adjudication hearing, the youth court adjudicated Rachel and Joshua as neglected children pursuant to Mississippi Code Section 43-21-105(*l*) (Rev. 2023).  The youth court then held a disposition hearing and ruled that CPS was allowed to bypass reasonable efforts to reunify the twins with their parents.  *See* Miss. Code Ann. § 43-21-603(7)(c) (Rev. 2021).  R.W. and J.R. appealed.[2]

¶2.     R.W. and J.R. raise four issues on appeal: (1) that the youth court lacked subject-matter jurisdiction and personal jurisdiction; (2) that venue was improper in Jackson County; (3) that there was insufficient evidence to support an adjudication of neglect for both children; and (4) that there was insufficient evidence to support the youth court's ruling to bypass reasonable efforts to reunite the children with their parents.  Finding no error, we affirm the youth court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶3.     R.W. gave birth to twins Rachel and Joshua on May 9, 2022.  J.R. was named the putative father, and B.W. was named the legal father.[3]  R.W. and both twins tested positive

---

[2] Mississippi Code Section 43-21-651 was amended in July 2024 and now requires an interlocutory appeal from a disposition order.  S.B. 2792, Reg. Sess., 2024 Miss. Laws ch. 531, § 11 ("Any matters adjudicated by the youth court through interim orders such as adjudication/disposition orders, or permanency review orders, may be only appealed through the interlocutory appeal process provided by the Rules of Appellate Procedure.").  Prior to the amendment, a disposition order was considered a final, appealable order for purposes of direct appeal.  *See, e.g.*, ***In re Int. of M.M.***, 319 So. 3d 1188, 1204 n.5 (Miss. Ct. App. 2021) ("An adjudication order becomes an appealable judgment only after a disposition order is entered by the youth court." (citing ***In re Int. of J.P.C. v. State***, 783 So. 2d 778, 781 (Miss. Ct. App. 2000).  Thus, because the disposition order in this case was entered in 2022, it was a final, appealable order.

[3] J.R. was initially named as the putative father.  Subsequent DNA testing confirmed he is the twins' biological father.

for amphetamines in the hospital. On May 10, 2022, the Jackson County Youth Court entered emergency custody orders placing Rachel and Joshua in CPS custody. That same day, the youth court also appointed a guardian ad litem (GAL) for the children. J.R. was incarcerated at the Jackson County Adult Detention Center during this time. The youth court therefore issued a transport order requiring the Jackson County Sheriff's Department to transport J.R. to the May 12, 2022, shelter hearing.

¶4. J.R. attended the shelter hearing, but R.W. and B.W. did not. CPS employee Michelle Burns testified that she personally notified R.W. of the hearing at the hospital on May 10, 2022. Intake Officer Katie Frazier testified that she and the GAL also spoke to R.W. "at length" while she was in the hospital and that R.W. "was told at least two or three times in person by me on that date to be here at 10 a.m. on today's date." R.W. reportedly stated she would be in attendance, but Frazier found out later that day that R.W. had left the hospital and had not been back to see her children. R.W.'s sister testified at the hearing that she had not seen or talked to R.W. since May 10, 2022. J.R. did not know R.W.'s whereabouts either but claimed he had a "video visit" with her later that day to talk with her "about missing court dates and how she needs to be here."

¶5. Burns testified that the twins were born prematurely and tested positive for amphetamines at birth. Rachel weighed four pounds and seven ounces at birth, and Joshua weighed three pounds and one ounce at birth. Neither child had a scheduled discharge date. Burns informed the court that CPS's permanent plan was to terminate parental rights and proceed with adoption. In support of this plan, Burns testified regarding R.W.'s and B.W.'s

3

history with CPS. Burns stated that R.W. did not have custody of any of her eight children because of her substance abuse, including during pregnancy. In 2021, she gave birth to a girl who tested positive for amphetamines. In 2019, she gave birth to a boy who tested positive for amphetamines. Burns testified that four of the eight children had been adopted. Frazier added that R.W.'s and B.W.'s parental rights were involuntarily terminated for those four children in the previous three years. Frazier also agreed with CPS's plan to terminate parental rights and pursue adoption. She recommended that the children be placed in a "neutral" setting such as a foster home.

¶6.     As for J.R., he was incarcerated for failing to register as a sex offender. J.R. has two convictions from 2012: (1) attempted sexual assault of a child and (2) contributing to the delinquency of a minor. J.R. testified at the hearing that he was on probation for felony menacing when he was convicted. At the close of the hearing, the court found there was probable cause to believe the children would be endangered if returned to their custodial parents. The court additionally found that the matter should be referred to a youth court prosecutor to look into aggravated circumstances against all three parents. Finally, the court ordered the children to remain in CPS's legal and physical custody in a nonrelative placement and scheduled an adjudication hearing for June 6, 2022.

¶7.     On May 13, 2022, the youth court prosecutor filed a petition alleging that Rachel and Joshua were neglected children. The petition contained three counts for each child. Count l alleged that "[R.W.] engages in the use and/or abuse of illegal substances, to include the use and/or abuse of amphetamine, causing said substance to be in the minor's system at time of

4

birth" and that "[R.W.] obtained no prenatal care." Count 2 alleged that "[R.W.] and [B.W.] (legal father) have an extensive history with [CPS] and Jackson County Youth Court, specifically as their rights to four children have been involuntarily terminated and they have failed to resolve concerns for their ability to provide a safe and stable home environment, which is contrary to the best interest of said minor." Count 3 alleged that "[J.R.], putative father, is currently incarcerated due to his failing to register as a sex offender and is unable to provide a safe and stable home environment for said minor."

¶8. On May 16, 2022, a summons with the petition was served on the GAL. On May 17, 2022, a summons with the petition was served on Burns with CPS. On June 3, 2022, J.R. was personally served with a summons and a copy of the petition. On June 6, 2022, the court continued the adjudication hearing to to June 14, 2022, because two of the parents had not been served. Service of process was attempted on B.W. on June 6, 2022, but he could not be located. Service of process was attempted on R.W. on June 8, 2022, but she could be located either.

¶9. On June 14, 2022, at the beginning of the adjudication hearing, the youth court noted that R.W. had faxed an unsigned document to the youth court titled "Respondents Answer and Defense to Plaintiff's Petition and Motion to Dismiss for Altercation [sic] of Evidence by Singing River Health System, Failure to Serve Proper Service of Process, and Failure to State a Claim to Which It Can Be Compensated."[4] As a result, the court entered a denial on behalf of the parents to all counts in the petition and set the adjudication hearing for August

---

[4] At this time the children were living with foster parents. The foster parents attended the June 14, 2022, hearing.

5

8, 2022.

¶10.    On August 8, 2022, all parents filed a Motion to Recuse requesting that Judge Sharon Sigalas recuse. Because Judge Sigalas had recently retired and was no longer presiding, the motion was considered moot by Judge Keith Miller.

¶11.    The adjudication hearing proceeded as scheduled. J.R. was present, but R.W. and B.W. were not. CPS employee Burns again testified regarding the twins' drug tests at birth, and their medical records were admitted into evidence. Burns also testified as to two of R.W.'s other children who tested positive for amphetamines at birth—a daughter in 2021 and a son in 2019. In support of her testimony, the prosecutor introduced into evidence a judgment terminating R.W.'s and B.W.'s parental rights for their daughter born in 2021.

¶12.    Intake Officer Frazier testified regarding the status of R.W.'s and B.W.'s other children, none of which were in their custody. When the court asked Frazier where R.W. and B.W. may be located, Frazier stated that the home she previously located them in was condemned and torn down. She additionally testified to her difficulties locating R.W. and B.W. in previous cases.

¶13.    J.R. testified that R.W. had instructed him not to cooperate in this case. J.R. also claimed that Singing River Hospital had falsified the twins' positive drug tests. The GAL testified that she had personally witnessed Rachel and Joshua suffering from withdrawals at the hospital. At the conclusion of the testimony, the court adjudicated Rachel and Joshua to be neglected children and entered an order that same day. The court scheduled a disposition hearing for August 23, 2022.

6

¶14. On August 15, 2022, R.W. and J.R. filed a "Motion for Blood Tests in Order to Help Determine Paternity." R.W. also filed a notice of hearing for August 23, 2022, at 9:30 a.m. The motion was set for hearing on August 23, 2022, at 9:30 a.m. R.W. and J.R. failed to appear on August 23, 2022, but the court granted the motion and ordered CPS to arrange and pay for J.R. to submit to a DNA test. The court also continued the disposition hearing to September 12, 2022.

¶15. On or about August 31, 2022, R.W. faxed the court a "Motion to Stay Pending Petition for Writ of Certiorari on an Appeal."[5] The motion was signed by R.W., B.W., and J.R.

¶16. On September 12, 2022, R.W., B.W., and J.R. failed to appear at the disposition hearing. Earlier that day, R.W. had faxed the court a "Motion for Continuance and to Set Aside or Dismiss It's [sic] Prior Order and Motion to Strike Dismissing Prosecutor's Motion to Bypass Reasonable Efforts," signed by J.R.[6] The court orally denied the motion and proceeded with the hearing.

¶17. For disposition, the youth court prosecutor recommended the court bypass reasonable efforts to reunify Rachel and Joshua with their parents pursuant to Mississippi Code Section 43-21-603(7)(c). The prosecutor relied on the admitted evidence from the adjudication hearing, which established that R.W.'s and B.W.'s parents rights were involuntarily terminated for at least one of the children's siblings. *See* Miss. Code Ann. § 43-21-

---

[5] The record does not contain a ruling on this motion.

[6] The prosecutor had not filed a "Motion to Bypass Reasonable Efforts."

7

603(7)(c)(iii) (Rev. 2021). As for J.R., the prosecutor argued that reasonable efforts should be bypassed based on J.R.'s conviction of attempted sexual assault of a child as well as his failure to register as a sex offender. The GAL concurred with the prosecutor's recommendation and testified that it is was in the children's best interest to bypass reasonable efforts to reunify them with the parents. The youth court agreed and ruled that reasonable efforts should be bypassed and issued a written order on September 12, 2022. R.W. and J.R. appealed.

## STANDARD OF REVIEW

¶18. Our standard of review in youth court cases is limited. *In re Int. of D.K.L. v. Hall*, 652 So. 2d 184, 189 (Miss. 1995). The youth court judge is the trier of fact. *Id.* When challenging a youth court's adjudicatory or dispositional order for sufficiency of the evidence, the standard of review is preponderance of the evidence. *In re Int. of C.R.*, 604 So. 2d 1079, 1083 (Miss. 1992). This Court considers all the evidence in the light most favorable to the State. *Id.* Further, "[i]f the evidence is such that, beyond a reasonable doubt, reasonable [minds] could not have reached the youth court's conclusion, we must reverse. However, if the evidence in the record supports the youth court's adjudication, considering the reasonable-doubt standard, then we must affirm." *In re Int. of S.M.K.S. v. Youth Ct. of Union Cnty.*, 155 So. 3d 747, 749 (Miss. 2015) (second alteration in original) (quoting *In re Int. of S.M.K.S. v. Youth Ct. of Union Cnty.*, 155 So. 3d 876, 878-89 (Miss. Ct. App. 2014)).

## ANALYSIS

8

1.    **Whether the youth court had subject-matter jurisdiction and personal jurisdiction.**

¶19.    R.W. and J.R. argue that the youth court lacked subject-matter jurisdiction in this case. Because Rachel and Joshua were adjudicated neglected children, this argument fails. Mississippi Code Section 43-21-151 provides exclusive jurisdiction in this case, stating that "[t]he youth court shall have exclusive original jurisdiction in all proceedings concerning a delinquent child, a child in need of supervision, a neglected child, an abused child or a dependent child . . . ." Miss. Code Ann. § 43-21-151(1) (Rev. 2023). None of the exceptions listed in Section 43-21-151 apply here.

¶20.    R.W. and J.R. also argue that the Jackson County Youth Court lacked personal jurisdiction because they were not served with process for the adjudication hearing. This claim is baseless. The record shows that the Jackson County Sheriff's Department personally served J.R. with process and a copy of the petition on June 3, 2022, and again on June 8, 2022. The sheriff's department also attempted to personally serve R.W. with process and a copy of the petition. After a diligent search and inquiry, the sheriff's department was unable to locate R.W. at either of her purported Mississippi addresses.

¶21.    Rule 22(a)(3)(iv) of the Uniform Rules of Youth Court Practice provides an alternative means of service when a parent cannot be located:

> **If parent, guardian, or custodian exercising parental responsibilities does not reside or cannot be located within the state.** *If the parent, guardian, or custodian exercising parental responsibilities does not reside within the state or cannot be located therein, the clerk shall issue summons to the guardian ad litem.* If the name and post office address of the parent or guardian who does not reside within the state or cannot be located therein can be ascertained, the clerk shall mail by "certified mail" ten (10) days

9

> before the date set for the hearing a copy of the summons with a copy of the petition attached to the summons to such parent or guardian. The clerk shall note the fact of such mailing upon the court docket. Ten (10) days after the summons has been mailed, the court may take jurisdiction as if summons had been personally served as herein provided.

U.R.Y.C.P. 22(a)(3)(iv) (emphasis added). Following the shelter hearing, the court set an adjudication hearing for June 6, 2022. The record shows that the GAL was personally served with summons and a copy of the petition on May 16, 2022. The youth court also directed the sheriff's department to personally serve J.R. and R.W.[7] The June 6, 2022, adjudication hearing was continued to June 14, 2022, because R.W. had not been located. The youth court ordered the clerk of the court to reissue process to J.R. and R.W. at a different address—"Near Franks Road and Nassturtium Drive in Moss Point, [Mississippi] 39562." The sheriff's department was still unable to locate R.W. On the summons return, the process server indicated that R.W. had moved to Mobile, Alabama, to an unknown address.

¶22.    In sum, J.R. was personally served with process. The record shows that the sheriff's department repeatedly attempted to personally serve R.W. but could not locate her. Further, R.W.'s out-of-state post-office address could not be ascertained. We find that the youth court complied with Rule 22(a)(3)(iv) by issuing summons to the GAL. Therefore, we find that service of process was proper, vesting the youth court with personal jurisdiction over R.W. and J.R. in these proceedings.

##    2.    Whether Jackson County was a proper venue.

¶23.    R.W. and J.R. claim that venue was not proper in Jackson County. Mississippi Code

---

[7] As stated above, J.R. was personally served on June 3, 2022, and again on June 8, 2022.

10

Section 43-21-155(2) establishes the proper venue for a neglected child:

> If a child is alleged to be an abused or neglected child, the proceedings shall be commenced in the county where the child's custodian resides or in the county where the child is present when the report is made to the intake unit. After adjudication the youth court may transfer the case at any stage of the proceeding for disposition to the county where the child resides or to a county where a youth court has previously acquired jurisdiction if that is in the best interest of the child.

Miss. Code Ann. § 43-21-155(2) (Rev. 2023). Rachel and Joshua were born at Singing River Hospital in Pascagoula, Mississippi (Jackson County), on May 9, 2022, and tested positive for amphetamines. At the shelter hearing on May 12, 2022, CPS employee Burns testified that CPS subsequently received a report "concerning the safety and well-being of the twins." Thus, because the children were present in Jackson County when the report was made, we find that Jackson County was the proper venue.

> **3. Whether sufficient evidence supported the youth court's adjudication of neglect.**

¶24. R.W. and J.R. argue that there was insufficient evidence to support the youth court's adjudication of neglect as to Rachel and Joshua. Mississippi Code Section 43-21-105(*l*) defines a neglected child as one:

> (i) Whose parent, guardian or custodian or any person responsible for his care or support, neglects or refuses, when able so to do, to provide for him proper and necessary care or support . . . or

> (ii) Who is otherwise without proper care, custody, supervision or support; or

> (iii) Who, for any reason, lacks the special care made necessary for him by reason of his mental condition, whether the mental condition is having mental illness or having an intellectual disability; or

11

> (iv) Who, for any reason, lacks the care necessary for his health, morals, or well-being.

Miss. Code Ann. § 43-21-105(*l*) (Rev. 2023).

¶25. At the adjudication hearing, the youth court prosecutor presented ample evidence to support his petition alleging that Rachel and Joshua were neglected children. CPS employee Burns testified both children tested positive for amphetamines shortly after birth. Their medical records were admitted into evidence. Burns also testified that R.W. had given birth to at least two other children who tested positive for amphetamines. Additional testimony revealed that R.W. did not have custody of any of their eight children and that her parental rights had been involuntarily terminated for four of those children. The youth court prosecutor introduced into a evidence a judgment terminating R.W.'s and B.W.'s parental rights for their daughter born in 2021. The evidence also showed that J.R. had been incarcerated for failure to register as a sex offender and that he had been previously convicted of attempted sexual assault of a child. Applying this Court's limited standard of review, we find that the evidence presented at the adjudication hearing was sufficient to support the youth court's adjudication of neglect for both Rachel and Joshua.

4. **Whether sufficient evidence supported the youth court's disposition bypassing reasonable efforts to reunify.**

¶26. R.W. and J.R. also argue that the evidence was insufficient to support the youth court's decision to bypass reasonable efforts to reunify the children with them. We disagree.

¶27. Mississippi Code Section 43-21-603(7)(c) allows the court to bypass reasonable efforts when:

(i) The parent has subjected the child to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse and sexual abuse; or

(ii) The parent has been convicted of murder of another child of that parent, voluntary manslaughter of another child of that parent, aided or abetted, attempted, conspired or solicited to commit that murder or voluntary manslaughter, or a felony assault that results in the serious bodily injury to the surviving child or another child of that parent; or

(iii) The parental rights of the parent to a sibling have been terminated involuntarily; and

(iv) That the effect of the continuation of the child's residence within his own home would be contrary to the welfare of the child and that placement of the child in foster care is in the best interests of the child.

Miss. Code Ann. § 43-21-603(7)(c) (Rev. 2021). "The paramount concern in determining the proper disposition is the best interest of the child, not reunification of the family." *In re Int. of S.A.M*, 826 So. 2d 1266, 1275 (Miss. 1988) (citing *Petition of Beggiani v. Beggiani*, 519 So. 2d 1208, 1213 (Miss. 1988)).

¶28. Here, the youth court prosecutor argued that R.W.'s and B.W.'s parental rights had been involuntarily terminated for at least one of Rachel and Joshua's siblings. *See* Miss. Code Ann. § 43-21-603(7)(c)(iii). This evidence had previously been introduced at the adjudication hearing. The prosecutor also argued that the court should bypass reasonable efforts to reunify the children with J.R. because he had been convicted of attempted sexual assault of a child and had failed to register as a sex offender. For these reasons, the youth court agreed that reasonable efforts should be bypassed. In considering all the evidence in the light most favorable to the State, we find that the evidence was sufficient to support the youth court's disposition.

13

¶29.    After review, we hold that the youth court had subject-matter jurisdiction over this matter as well as personal jurisdiction over R.W. and J.R.  Further, we hold that Jackson County was the proper venue.  Finally, we hold that sufficient evidence supported both the youth court's adjudication of neglect as well as its decision to bypass reasonable efforts to reunify.  Therefore, we affirm the youth court's judgment.

¶30.    **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR.**