# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2023

Lyle W. Cayce
Clerk

No. 21-60830

MEKALE DUCKSWORTH,

*Plaintiff—Appellee*,

*versus*

JUSTIN LANDRUM, *individually and in his official capacity*; CLINT HEDGEPETH, *individually and in his official capacity*; JOSH WELCH, *individually and in his official capacity*; JOHN WINDSOR, *individually and in his official capacity*,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:20-CV-114

Before HIGGINBOTHAM, HIGGINSON, and OLDHAM, *Circuit Judges*.
PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

Four police officers unlawfully arrested Mekale Ducksworth. Ducksworth sued under 42 U.S.C. § 1983. The officers appeal the district court's denial of their summary judgment motion as to (1) excessive force (Officer Welch), (2) false arrest (all officers), and (3) fabrication of evidence (Officer Landrum). We lack jurisdiction over the appeal and dismiss.

No. 21-60830

**I.**

This case arises from an incident at a Rainforest Carwash in Laurel, Mississippi. On March 15, 2018, defendants Justin Landrum, Josh Welch, Clint Hedgepeth, and John Windsor—officers of the Laurel Police Department—responded to a call about an unruly customer, Mekale Ducksworth, at the car wash. Before seeing him, the officers believed that Ducksworth was a man with open warrants named Kenny Rogers Jr. When they arrived, the car wash attendant told them that Ducksworth (unnamed to the officers at this point) had pulled his truck into a vacuum bay before paying for a car wash and became belligerent when she told him that he had to pay first. She told the officers that Ducksworth apologized before they arrived and when the officers asked if she wanted Ducksworth to leave, she responded, "As long as he stays out there and he does what he's doing now, he's fine." The officers went to talk to Ducksworth.

After walking to Ducksworth's truck, one of the officers told him to exit his truck. As soon as he exited, the officers knew he was not Rogers, the individual with open warrants. Ducksworth explained that he apologized to the attendant but that he saw someone else pull into the vacuum bay without paying for a car wash first. Welch told Ducksworth, "Get in your vehicle, leave, and don't come back. You're banned from this place." Ducksworth responded, "I'm gonna vacuum my truck out first. I paid for my service." Welch continued to tell him to leave, and he refused. Landrum took a step toward Ducksworth, and Ducksworth said, "Don't put your hands on me, brah. Don't put your hands on me, man." Landrum stated, "What you gonna do is put your hands behind your back." At the same time, Landrum immediately drew his taser and ordered Ducksworth to turn around and place his hands behind his back. Ducksworth refused and said, "I'm gonna get in my truck and leave, bro." Landrum continued to order Ducksworth to put his hands behind his back and Ducksworth asked, "What's your name,

man?" Landrum then shot Ducksworth with the taser, but the taser failed. Ducksworth looked down at the defective taser coils, looked up at Landrum, then turned and moved toward his truck.

Simultaneously, Hedgepeth and Windsor moved in, stopping Ducksworth from entering his truck and pulling him towards the ground. With Ducksworth a few feet from the open truck door, Welch said, "Taser! Taser!" as he shot coils into Ducksworth's back and then applied the taser gun itself to his left quadricep while Ducksworth screamed. Welch continued to tase Ducksworth as he fell to the ground, and Hedgepeth and Windsor put cuffs on him. Welch exclaimed: "When we tell you to do something, you do it! I don't care who you think you are!" The officers arrested Ducksworth.

That day, Landrum submitted an affidavit stating Ducksworth "unlawfully and willfully refuse[d] to comply with *the commands of Officer Justin Landrum* . . . by failing to leave the business when asked to do so . . . ." He also filed an Offense / Incident Report and a Use of Force Report where he claimed car wash staff "stated that the suspect refused to leave the carwash . . . ." The City of Laurel charged Ducksworth with failure to comply with an officer's order or direction, and a municipal judge found Ducksworth not guilty. At Ducksworth's trial, Landrum admitted that both statements were false.

Ducksworth sued the individual officers and the City of Laurel under 42 U.S.C. § 1983 and state law. The defendants moved for summary judgment on all claims. The district court largely granted the motion, denying summary judgment only as to Ducksworth's claims of excessive force by Officer Welch, false arrest by all officers, and fabrication of evidence by Officer Landrum. The officers timely appealed each surviving claim.

No. 21-60830

## II.

"The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine to the extent that it turns on an issue of law."[1] Where the district court determines that genuine issues of material fact preclude a determination of qualified immunity, we have jurisdiction only to address the legal question of whether the genuinely disputed factual issues are material for the purposes of summary judgment.[2] We have no jurisdiction to consider the correctness of the plaintiff's version of the facts and cannot review the district court's factual determination that a genuine factual dispute exists.[3] Within this limited appellate jurisdiction, we review denial of a motion for summary judgment on the basis of qualified immunity in a § 1983 suit *de novo*.[4]

## III.

We address Ducksworth's claims in turn, starting with excessive force, then false arrest, and finally fabrication of evidence.

---

[1] *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004) (internal quotation omitted).

[2] *Lytle v. Bexar County, Texas*, 560 F.3d 404, 408 (5th Cir. 2009).

[3] *See Edwards v. Oliver*, 31 F.4th 925, 930 (5th Cir. 2022) (dismissing appeal for lack of jurisdiction where the appellant "giv[es] lip service to the correct legal standard" but instead "assumes fact different from those assumed" below (quoting *Reyes v. City of Richmond*, 287 F.3d 346, 350 (5th Cir. 2002)); *Amador v. Vasquez*, 961 F.3d 721, 726 (5th Cir. 2020) ("We have no jurisdiction to hear an interlocutory appeal . . . when a district court's denial of qualified immunity rests on the basis that genuine issues of material fact exist." (quoting *Michalik v. Hermann*, 422 F.3d 252, 257 (5th Cir. 2005)))); *Winfrey v. Pikett*, 872 F.3d 640, 643–44 (5th Cir. 2017).

[4] *Winfrey*, 872 F.3d at 644.

## A.

Ducksworth alleged the four officers violated his Fourth Amendment rights by using excessive force during arrest. The district court granted summary judgment to Hedgepeth, Windsor, and Landrum, only denying it as to Welch, who appeals here. In reviewing a denial of summary judgment, we must first determine if we have jurisdiction over the appeal. We lack jurisdiction over Welch's appeal because "his appeal boils down to a challenge of the genuineness, not the materiality, of factual disputes."[5]

The district court denied Welch's motion for summary judgment as to excessive force because a "reasonable jury could conclude, after viewing the body camera video, that Windsor and Hedgepeth had [Ducksworth] under reasonable control at the time that Welch used the ta[s]er, and, therefore, he posed no threat to the safety of the officers or others." In viewing the officer's bodycam video, the district court identified these facts as genuinely disputed. We agree. The video demonstrates that Ducksworth exited his vehicle in a friendly manner with his cell phone in hand and greeted the officers, explaining that he saw someone else use the car wash without paying as he then attempted to do. The officers then told him he was banned from the car wash and must leave. Ducksworth responded peacefully that he had since paid for his car wash and that he wanted to finish cleaning his car. At that point, the officers attempted to seize him, first by tasing him and then by seizing him as Ducksworth turned to leave. On appeal, Welch recounts these facts of genuine dispute in his own favor. He argues that Ducksworth took a defensive and threatening posture, resisted being pulled from the vehicle, struggled after being removed, and willfully and aggressively refused to follow commands while resisting the officer's detainment. Contrary to

---

[5] *Id.*

No. 21-60830

Welch's argument, those facts are of genuine dispute. Welch fails to take the facts in a light most favorable to Ducksworth, instead relying on facts different from those assumed by the district court.[6] We lack jurisdiction to consider Welch's appeal of the genuineness of the district court's factual determinations.[7]

**B.**

Our analysis of Ducksworth's false arrest claim mirrors his excessive force claim. While the district court only denied summary judgment as to Welch for excessive force, it denied summary judgment as to all officers for false arrest. As with excessive force, we dismiss the officers' appeal because it only challenges the genuineness of the factual dispute.

In discussing this claim, the district court identified a factual dispute—that Ducksworth "did not become physically combative until after Defendants first used force on him." Again, the officers invite us to assume facts different from those assumed by the district court,[8] including that "Ducksworth made a defensive gesture and closed his fists when approached." We lack jurisdiction to consider the officers' appeal of the genuineness of the district court's factual determinations.[9]

---

[6] *Reyes*, 287 F.3d at 351.

[7] *Edwards*, 31 F.4th at 932 ("Because the factual dispute is material, 'we lack jurisdiction to consider the propriety of the summary judgment denial.'" (quoting *Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir. 2001)); *Winfrey*, 872 F.3d at 644.

[8] *Edwards*, 31 F.4th at 930.

[9] *Winfrey*, 872 F.3d at 644.

No. 21-60830

## C.

Finally, we must address the basis of our jurisdiction over Landrum's appeal,[10] which does not invoke qualified immunity. Federal courts of appeal have jurisdiction of "appeals from all final decisions of the district courts."[11] Denial of summary judgment is not a final decision. Orders that resolve a fact-related dispute of evidence sufficiency, i.e. which facts a party may or may not be able to prove at trial, however, are not immediately appealable and must await final judgment to be appealed.[12] The district court based its denial of summary judgment for this issue on a genuine dispute of material fact: whether Landrum fabricated evidence to secure a charge against Ducksworth. We lack jurisdiction over Landrum's appeal of this claim.

## IV.

For the foregoing reasons, we DISMISS the appeal for lack of jurisdiction.

---

[10] *Cantu v. Rocha*, 77 F.3d 795, 802 (5th Cir. 1996).

[11] 28 U.S.C. § 1291.

[12] *Cantu*, 77 F.3d at 802.

ANDREW S. OLDHAM, *Circuit Judge*, concurring in part and dissenting in part:

I agree that the officers are not entitled to qualified immunity on Mekale Ducksworth's false arrest and excessive force claims. But I respectfully disagree with the majority's understanding of interlocutory appellate jurisdiction and the relevant qualified immunity inquiry.

I.

First, the facts. Two officer body cameras captured the entire event. We therefore must "view[ ] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007); *see also Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (applying *Scott*); *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) ("[W]e assign greater weight, even at the summary judgment stage, to the video recording taken at the scene." (quotation omitted)); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("A court of appeals need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape." (quotation omitted)). I'll do my best to summarize the footage, with the caveat that one must see the videos to believe them.

Shortly before noon on March 15, 2018, four police officers responded to a call from a car wash manager in Laurel, Mississippi. The manager reported that she had a brief squabble with a customer. The manager explained that the customer pulled into the vacuum bay without first paying for a car wash. After briefly quarreling with her, the customer paid and later apologized. The officers asked where the customer was. She told them he was in the vacuum bay cleaning his car. One officer asked: "You want him to leave?" The manager said he was free to stay: "As long as he stays out there

and he does what he's been do—what he's doing now, he's fine. But like I told him there was no need [for] him [to] do[ ] all that . . . crap."

You might think that was the end of this case. But for reasons unclear from the record, the four officers—Justin Landrum, Clint Hedgepeth, Josh Welch, and John Windsor—nonetheless decided to confront the then-peaceful customer. One said: "We gonna go over here and talk to him. Find out what his problem is."

All four officers approached Ducksworth's truck, parked in a vacuum bay. Ducksworth was sitting in the driver's seat. One officer said: "Step out, man." Ducksworth quickly and cheerfully complied.

Ducksworth explained to the officers what happened with the car wash manager. As he chatted with the officers, Ducksworth leaned against the side of his truck. His posture was relaxed. The videos show both of his hands throughout the conversation. He held his phone in one hand and gesticulated with the other. The officers could also see Ducksworth's children sitting in the backseat of the truck.

The officers moved in closer, surrounding him so his back was against the truck.  Ducksworth said: "I'm gonna be real with you. . . . You aren't arresting me." To which, several officers shouted: "Are we arresting you?!" Ducksworth responded: "I'm just saying; you guys come up [inaudible] and all that; I mean, how we gonna handle this situation, what would you all like to do? I mean, how may I help you? She [the carwash manager] just said something. I mean I seen her on the phone calling the police. You know what I'm saying? I apologized to the young lady. But I seen a young man— he didn't go through the car wash and he pulling in here and it ain't nothing."

Then one officer ordered: "Well get in your vehicle and leave and don't come back. You're banned from this place." Ducksworth responded: "Hey, imma vacuum my truck out first. Sir, I paid for my service." Officer

Welch ordered: "Let's go. Right now." To which Ducksworth replied: "I paid for my service, man. I paid for my service. Imma vacuum my truck out." Welch then took a step toward Ducksworth and said: "You done causing no problem over here?" Ducksworth replied: "Nah, I ain't causing no problems. I'm gonna finish my service." One officer said: "I'm telling you what you're gonna do." The officers then closed in on Ducksworth. Ducksworth looked at Officer Landrum standing less than two feet from him and said: "Don't put your hands on me, bruh. Don't put your hands on me, man."

Suddenly Landrum raised his taser, pointed it at Ducksworth, and shouted: "What you're gonna do is put your hands behind your back!" Ducksworth continued to stand with his hands relaxed, unclenched, and visible at his sides. The officers all started yelling: "Put your hands behind your back!" Ducksworth said: "Nah, man. Nah, man. Imma get in my truck and leave, bruh." Then gesturing at Landrum, he asked: "What's your name? What's your name?"

Landrum yelled "taser, taser" and tried to tase Ducksworth. But one of the prongs hit and attached to Ducksworth's zipper so the taser failed. Ducksworth flinched but otherwise did not respond. Then, he slowly turned away from the officers and toward the truck.

Things went downhill from there. A flurry of officers charged at Ducksworth and grabbed him. They dragged him by the arms away from the truck. Ducksworth cried: "What are y'all doing? Hey, I got my kids in the truck, man. I got my kids in the truck. Don't tase me!" The officers did anyway. Two officers held him by the arms as Welch tased him in the back. This time the taser worked. Ducksworth's legs buckled. And Welch pressed the taser to Ducksworth's leg to shoot him again for good measure. Ducksworth screamed, fell to the ground, and lost control of his bladder.

The officers pinned him to the ground, pressing his face against the pavement. One officer ordered: "Put your hands behind your back!" In between his screams, Ducksworth cried: "Okay, yeah, okay, okay!" The officers held him down and clasped handcuffs on him. One officer shouted: "When we tell you to do something, you do it! I don't care who you think you are! When we tell you to leave, that's what you have to do." Ducksworth responded: "I was gonna do that, bruh. . . . I got my kids in the truck man." The officers forced Ducksworth to lie on the pavement for several minutes in his own urine despite his repeated requests to see his children.

Eventually, the officers let Ducksworth get up from the pavement. He called someone to pick up his children. The police put him in a squad car.

Ducksworth was charged with disorderly conduct and resisting arrest. At Ducksworth's municipal trial Landrum submitted an affidavit claiming that Ducksworth unlawfully refused to follow Landrum's commands to leave the car wash. ROA.125. But on the stand, Landrum admitted that this affidavit was inaccurate because he had not ordered Ducksworth to leave the premises—only Welch had. ROA.170–71. Landrum also submitted an incident report, which said the car wash manager told the officers that Ducksworth refused to leave the car wash. ROA.113. At the municipal trial, Landrum testified that this portion of the report was "somewhat" inaccurate. ROA.175. Ducksworth was found not guilty on all counts.

Ducksworth brought multiple constitutional claims under 42 U.S.C. §§ 1983 and 1985 against the City of Laurel, Mississippi, and Officers Landrum, Hedgepeth, Welch, and Windsor, each in their individual and official capacities. He sought money damages.

Defendants moved for summary judgment, raising qualified immunity as a defense to some but not all of Ducksworth's claims. The district court granted their summary judgment motion in part. But the court denied the

No. 21-60830

motion for the (1) § 1983 excessive force claim against Welch; (2) § 1983 false arrest claim against Landrum, Hedgepeth, Welch, and Windsor; and (3) § 1983 due process claim against Landrum for fabrication of evidence.

Defendants appealed. Our review is *de novo*. *Salazar*, 37 F.4th at 281.

## II.

"Jurisdiction is always first." *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022) (quotation omitted). Under the collateral order doctrine applicable to qualified immunity appeals, we must assess our jurisdiction on a claim-by-claim basis. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding that only some claims are "appealable final decision[s]" (quotation omitted)).

I agree with the majority that we lack jurisdiction over Landrum's attempt to appeal the denial of summary judgment on Ducksworth's fabrication of evidence claim. Landrum did not move for qualified immunity on that claim. Therefore, as to that claim, he does not get the benefit of an immediate interlocutory appeal. *See, e.g.*, *Plumhoff v. Rickard*, 572 U.S. 765, 771 (2014) ("An order denying a motion for summary judgment is generally not a final decision within the meaning of § 1291 and is thus generally not immediately appealable.").

As to Ducksworth's false arrest and excessive force claims, however, we do have jurisdiction. The officers moved for qualified immunity on those claims. The district court denied it. Therefore, the officers were entitled to an immediate appeal, and they timely exercised their right to it. *See ibid.*

The majority's contrary jurisdictional analysis is puzzling. True, the Supreme Court has held that interlocutory appellate jurisdiction does not attach when a district court denies an officer's qualified immunity motion based *solely* on "evidence sufficiency." *Johnson v. Jones*, 515 U.S. 304, 313

12

No. 21-60830

(1995). But as the Supreme Court subsequently clarified, *Johnson* is a narrow exception to the otherwise applicable rule that officers get immediate appeals to challenge qualified immunity denials. *See Plumhoff*, 572 U.S. at 771–73. Here, as in *Plumhoff*, the district court did not deny qualified immunity based on "evidence sufficiency"; here, as there, no one disputes who used force against whom and under what circumstances. The dispute is a purely legal one regarding Ducksworth's clearly established rights under the Fourth Amendment. As in *Plumhoff*, we have interlocutory appellate jurisdiction.

III.

Let's start with false arrest. Here, as in all qualified immunity cases, the plaintiff must show (A) the violation of a constitutional right that (B) was clearly established at the time of the officers' conduct.

A.

The right to be free of false arrests arises from the Fourth Amendment, which prohibits "unreasonable . . . seizures." U.S. CONST. amend. IV. An arrest is a seizure. *See Dunaway v. New York*, 442 U.S. 200, 208 (1979). To effectuate a lawful arrest, an officer must act reasonably, *i.e.* the officer must have probable cause that the suspect committed a crime. *See id.* at 213. Thus, to bring a claim of false arrest, Ducksworth must show he was (1) seized (2) without probable cause at the time of the arrest.

Obviously, Ducksworth was seized. *Id.* at 208 (arrest is a seizure). The more interesting question is when this seizure took place. An arrest takes place when an officer uses "physical force to restrain movement, even when it is ultimately unsuccessful." *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *see also Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021) ("[T]he application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued."). Ducksworth was seized when Landrum shot him with the taser, and the taser

13

hit Ducksworth's zipper, even though the taser failed. In that moment, Landrum applied "physical force to restrain" Ducksworth. *Hodari D.*, 499 U.S. at 626. It's irrelevant that the officers didn't subdue him.

The next question is whether officers had probable cause to arrest Ducksworth. To determine whether probable cause exists, "we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quotation omitted). In other words, the officers must reasonably believe they have probable cause *before* the arrest.

The officers are flat wrong to contend they can manufacture probable cause by giving Ducksworth an *ultra vires* order to leave the car wash and daring him to ignore it. The closest relevant source of state law is Mississippi's disorderly conduct statute. *See* Miss. Code Ann. § 97-35-7. But to prove a violation, the State must prove:

> (1) [the citizen]—with the intent to provoke a breach of the peace, or under circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace— refused to promptly comply with or obey a request, command, or order to act or do or refrain from acting or doing something; (2) the purpose of the request, command, or order was to avoid a breach of the peace; (3) the person giving the command was a law-enforcement officer; and (4) the law-enforcement officer—at the time of giving the command, order, or request—had the authority to then and there arrest him for a violation of the law.

*Mastin v. State*, 180 So. 3d 732, 737 (Miss. Ct. App. 2015) (en banc) (citing Miss. Code Ann. § 97-35-7(1)).

No reasonable officer—and no reasonable jurist looking at the video— could conclude the State could come close to showing the first, second, or

fourth of these elements, much less all of them. (1) At the time Welch ordered Ducksworth to leave the car wash, Ducksworth had done nothing to evince intent to breach the peace. He was peacefully vacuuming his truck and chatting with the officers. (2) The purpose of Welch's command is unclear because the car wash manager specifically told all four officers that Ducksworth was welcome to stay. But regardless, there is zero evidence to suggest Welch had any purpose to *prevent* (as opposed to *provoke*) a breach of the peace when he gave the command. (4) The officers had no authority to arrest Ducksworth when Welch ordered him to leave. He hadn't violated any law. The video reveals that immediately before Welch gave that order, Ducksworth was merely chatting with officers, recounting his apology to the carwash manager, and asking the officers "how may I help you?" The officers' real contention appears to be that they are free to order citizens to do anything any time and that refusal to obey creates probable cause for breach of the peace. But that is not the law, and no reasonable officer could believe otherwise.

The officers also argue they had probable cause because Ducksworth resisted their attempts to arrest him. True, state law forbids resisting a *lawful* arrest. *See* MISS. CODE ANN. § 97-9-73 ("It shall be unlawful for any person to obstruct or resist . . . his lawful arrest . . . ."). But to trigger this law, officers must have probable cause to arrest *before* the citizen resists; such cause was plainly absent. It would be the ultimate bootstrapping for officers to effectuate an *unlawful* arrest and then charge someone for resisting it. *See S.M.K.S. v. Youth Ct. of Union Cnty.*, 155 So. 3d 876 (Miss. Ct. App. 2014), *aff'd*, 155 So. 3d 747 (Miss. 2015) ("The offense of resisting arrest presupposes a lawful arrest. A person has a right to use reasonable force to resist an unlawful arrest." (quoting *Taylor v. State*, 396 So. 39, 42 (Miss. 1981))).

No. 21-60830

The videos show a plain violation of the Fourth Amendment. The Supreme Court has made clear that plaintiffs "generally recover damages that are proximately caused by any Fourth Amendment violation." *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1548 (2017). That means Ducksworth can seek damages for his injuries unless the officers are entitled to qualified immunity.

## B.

They're not.

Qualified immunity protects a law enforcement officer from personal liability in a lawsuit unless a plaintiff shows that the officer's conduct violates a clearly established constitutional right. As I recently explained, here's how I understand the relevant inquiry:

> Clearly established law is all about fair notice. For there to be fair notice, the clearly-established-law standard requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. That is, the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. There are generally two different paths to show this: (1) an on-point case and (2) the obvious-case exception.

*McMurry v. Brunner*, No. 21-50888, 2022 WL 17493708, at *7 (5th Cir. Dec. 7, 2022) (Oldham, J., concurring in the judgment) (quotation omitted). "The Supreme Court recently made clear that for the obvious-case exception, there are two necessary conditions: (1) particularly egregious facts and (2) no evidence that the official's actions were compelled by necessity or exigency." *Id.* at *8 (Oldham, J., concurring in the judgment) (quotation omitted).

Ducksworth made both showings for the obvious-case exception. First, these circumstances were particularly egregious so that "any reasonable officer should have realized" that this arrest was unconstitutional.

16

*Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020). Supreme Court cases clearly establish that arresting someone without probable cause violates the Fourth Amendment. *See, e.g.*, *Dunaway*, 442 U.S. at 213 ("Fourth Amendment seizures are 'reasonable' only if based on probable cause."). That's the end of this case: The officers not only lacked probable cause; they had no cause whatsoever to arrest Ducksworth. Ducksworth was at a private business. He was a paying customer. The car wash manager told the officers he could stay. Any argument between Ducksworth and the manager was over before the officers arrived. He wasn't causing a disturbance. The officers had no reason to approach him in the first place. Ducksworth remained calm and even cheerful. Nonetheless, the officers gave him unlawful orders to leave, shot him with a taser, and then complained that Ducksworth resisted their obviously unlawful commands and arrest. These facts are egregious.

Second, no exigency or necessity justified the unlawful arrest. There's no indication that Ducksworth was violent or threatening. He did not escalate the situation. The *police* did. They surrounded and purported to ban him from the premises. They commanded him to put his hands behind his back. If there was an exigency, it was *police*-created. And police-created exigencies receive no deference under the Fourth Amendment. *See Kentucky v. King*, 563 U.S. 452, 462 (2011).

The purpose of the qualified immunity doctrine is to prevent litigants and courts from using 20/20 hindsight to second-guess law-enforcement decisions made in exigent circumstances and in the fog of uncertainty. The doctrine encourages officers to vigorously protect the public (and themselves) by eliminating personal liability for reasonable efforts and even mistakes. But the doctrine has never protected "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). This case falls comfortably outside the ambit of qualified immunity.

IV.

Ducksworth's excessive force claim is related to, but analytically distinct from, his false arrest claim. Even if the police had probable cause to arrest Ducksworth—a premise refuted in Part III, *supra*—it does not follow that they could reasonably *tase* Ducksworth to effectuate that arrest. In my view, (A) Welch's decision to tase Ducksworth was plainly unreasonable under any reasonable viewing of the bodycam videos. And (B), Welch is not entitled to qualified immunity.

A.

Welch used a taser to seize—*i.e.*, to arrest—Ducksworth. Ducksworth alleges that constituted excessive force. "To establish excessive force under the Fourth Amendment, a plaintiff must demonstrate (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Jackson v. Gautreaux*, 3 F.4th 182, 186 (5th Cir. 2021) (quotation omitted). The second and third prongs go hand-in-hand.

First, injury. To bring a claim for excessive force, Ducksworth must demonstrate that he suffered an injury. It need not be significant, but it must be more than *de minimis*. *See Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022). But the injury requirement is "a sliding scale, not a hard cutoff." *Ibid.* (quotation omitted). The degree of injury he must prove is directly related to the constitutionally permissible level of force under these circumstances. *Ibid.* Thus, "as long as [Ducksworth] has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from [Welch's] unreasonably excessive force." *Id.* at 982 (quotation omitted).

Ducksworth obviously incurred injuries. The videos show Ducksworth screaming in agony, as anyone would, when he's tased. And the

police reports show that Ducksworth incurred puncture wounds from the taser prongs. That's injury.[*]

Second, to determine if Welch's force violated the Fourth Amendment, we look to whether the force was "objectively reasonable"—without regard to Welch's motives. *Scott*, 550 U.S. at 381. This inquiry involves balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 383 (quotation omitted). In doing so, we consider (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). We judge the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ibid.* This is a fact-intensive inquiry. *Id.* at 396–97. The so-called *Graham* factors are notoriously difficult to balance. *See, e.g.*, *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) ("Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers. But the general rules set forth in . . . *Graham* do not by themselves create clearly established law outside an obvious case." (quotation omitted)); *Salazar*, 37 F.4th at 286–87 (similar).

But in this case, the *Graham* inquiry is obvious. Even assuming Ducksworth committed a crime, it was at most failing to leave the car wash when Welch commanded him to do so. Welch cites no authority to suggest such a "crime" is severe enough to warrant tasing a man. Even on the

---

[*] *Solis* also says that "purely psychological injuries will prove cognizable . . . ." 31 F.4th at 981. If that's true, then Ducksworth has at least met his burden to go to trial based on the fact that Welch's taser caused Ducksworth to lose control of his bladder and urinate on himself in front of his children in a public parking lot.

(aggressive) assumption that Ducksworth could be arrested, he posed no threat. The manager even said he was "fine" and free to stay. He had no weapon. He was cheerful and not threatening anyone. There was no legitimate governmental interest in ensuring public safety. *Scott*, 550 U.S. at 383. And at the moment Welch tased him, Ducksworth did not "*actively* resist[ ] arrest or attempt[ ] to evade arrest by flight." *Graham*, 490 U.S. at 396 (emphasis added). At most, Ducksworth *passively* resisted arrest by failing to immediately heed the officers' (unlawful) commands. And even then, *before* the officers tased him, Ducksworth tried to deesclate the situation by agreeing to leave the carwash in accordance with the (unlawful) commands. The use of force in this case was plainly unreasonable.

Finally, it's important to account for possible exigencies. *Kentucky*, 563 U.S. at 466 ("[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving."). Here, there were no such exigencies. The situation unfolded slowly. Ducksworth did not make sudden movements. He remained calm. If anything, the *officers*—not Ducksworth—escalated matters. They have offered no reason for approaching Ducksworth in the first place. They ordered him off the premises in direct contravention of the manager's instructions. And Landrum pulled out his taser and shouted "put your hands behind your back" without cause. These police-created exigencies receive no deference under the Fourth Amendment. *Id.* at 462.

Thus, the totality of the circumstances clearly show that Welch's use of force was unreasonable under the Fourth Amendment.

## B.

Welch is not entitled to qualified immunity for his use of excessive force. That's because this case fits neatly into the obvious-case exception.

*See, e.g.*, *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (noting that qualified immunity doesn't bar excessive force claims in "an obvious case" (quotation omitted)). Again, we ask whether Ducksworth has shown particularly egregious facts and no exigencies compelling the force. *McMurry*, 2022 WL 17493708, at *8 (Oldham, J., concurring in the judgment).

First, particularly egregious facts. After Landrum arrested Ducksworth by unsuccessfully tasing him, Ducksworth turned toward his truck. Suddenly two officers grabbed and wrangled him into a tight grip. Then Welch swooped in with his taser. He tased Ducksworth first in the back. As Ducksworth fell, Welch pressed the taser to Ducksworth's leg and tased him again. Because Welch had no constitutional authority to arrest Ducksworth, he had no authority to use force to effectuate that arrest.

And even if the officers had grounds to effectuate the arrest, this did not open the door to any and all force. At the time Welch tased Ducksworth, the officers held him tightly. They knew Ducksworth didn't have weapons in his hands. *Cf. Kisela*, 138 S. Ct. at 1153 (concluding that the obvious case exception did not apply when an officer used force against a woman wielding a knife). Ducksworth hadn't made threatening movements or actively resisted. This force was entirely unjustified.

Second, no exigency or necessity. Ducksworth posed no threat to the officers or the public. There was no pressing need to incapacitate or restrain him. The only exigency was police-created. *See supra* Part III.B. And police-created exigencies do not excuse excessive force. *See Kentucky*, 563 U.S. at 462. Thus, Welch is not entitled to qualified immunity.

\* \* \*

I agree with the majority that we lack jurisdiction over Landrum's appeal of the due process claim because he did not assert qualified immunity in the district court. I also agree that the officers are not entitled to qualified

No. 21-60830

immunity on Ducksworth's Fourth Amendment claims. I respectfully disagree, however, with my learned colleagues regarding our appellate jurisdiction over the Fourth Amendment claims; I would affirm the denial of qualified immunity rather than dismiss.