# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 3, 2023

Lyle W. Cayce
Clerk

No. 22-50836

_____

Fernando Morales, *Individually and on behalf of his minor children*, F.M. and D.M.; Zerenia Cardoza, *in her Individual Capacity*,

*Plaintiffs—Appellees*,

*versus*

Ruben Cardenas,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:19-CV-217

_____

Before Stewart, Dennis, and Wilson, *Circuit Judges*.

Per Curiam:[*]

This appeal arises out of an incident involving a physical altercation between Fernando Morales and Enrique Carrillo ("E. Carrillo"), an off-duty El Paso police officer, and his son, Aaron Carrillo ("A. Carrillo"). Ruben Cardenas, a sergeant in the El Paso Police Department ("EPPD"), arrived at the scene to investigate. Morales and his wife, Zerenia Cardoza, who

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

witnessed the altercation, sued Cardenas and the Carrillos under 42 U.S.C. § 1983 alleging that they conspired to frame Morales for assault in violation of his Fourteenth Amendment due process rights. The district court denied Cardenas's motion for summary judgment on the basis of qualified immunity. Cardenas timely filed this interlocutory appeal. Because we lack appellate jurisdiction to consider the arguments Cardenas raises, we dismiss his appeal.

## I. Factual and Procedural History

On July 1, 2017, Morales—accompanied by his wife, Cardoza; their two minor children; his cousin, Yesenia Jaquez; Jaquez's son; and Sonia Baca, a family friend—drove through the parking lot of an El Paso Walmart after leaving a nearby water park. While driving, Morales nearly collided with a car driven by E. Carrillo, an off-duty EPPD officer, who was accompanied by his adult son A. Carrillo. Morales alleges that after exiting his vehicle he approached the Carrillos' vehicle and, without any physical provocation, A. Carrillo exited his vehicle, grabbed Morales from behind, placed him in a chokehold, pulled him to the ground, and continued to choke him. According to Morales, as he struggled against the chokehold, E. Carrillo began punching his head and body.

Pete Herrera, another off-duty EPPD officer, witnessed the altercation and called 911. During the 911 call, Herrera recognized E. Carrillo and decided to approach the fight and intervene. Of the EPPD officers dispatched to the scene, Officer Julio Guereca arrived first to the scene but did not recognize E. Carrillo. Guereca spoke to both E. Carrillo and Morales, each of whom blamed the other for starting the fight. Thereafter, Cardenas arrived at the scene and took over the investigation. According to Morales, upon his arrival, Cardenas greeted E. Carrillo enthusiastically by "hugging, laughing, talking and dancing," and the two acted "like best friends meeting

at a class reunion." Morales also saw A. Carrillo wrap his arms around Cardenas's throat, demonstrating the chokehold he had earlier performed on Morales. Morales believed that the gestures were mockingly portrayed as several officers laughed at the reenactment.

Next, Guereca interviewed Cardoza and Jaquez and took notes about the incident in a small notebook. While Guereca spoke with Cardoza and Jaquez, Cardenas took Guereca aside. At the end of his conversation with Cardenas, Guereca tore out the top few pages of the small notebook where he had been writing and crumpled them in his hand. Neither Cardoza nor Jaquez saw what happened to the crumpled pages. After speaking with the Carrillos, Herrera, and other witnesses, Cardenas spoke to Morales. Hereafter, Cardenas informed Morales that he had determined that Morales was the aggressor in the fight with the Carrillos. He handcuffed Morales and put him in the back of Officer Gabriel Lechuga's cruiser. Morales, who had a significant cut on his chin, asked Cardenas if he could receive medical aid but Cardenas told the arriving Emergency Medical Services that the EPPD did not need assistance.

Still at the scene and after questioning Morales, Cardenas spoke to Cardoza and Jaquez. According to Jaquez, in response to her numerous requests for medical aid on behalf of Morales, Cardenas threatened to arrest her for public intoxication. After conducting a background check on both Cardoza and Jaquez, Cardenas discovered nine outstanding arrest warrants for traffic violations attributed to Cardoza. Cardenas then cautioned Cardoza that if she refused to cooperate in the investigation, he would arrest her for the traffic violations. Cardoza replied that since Cardenas refused to listen to her side of the story, she was done talking to him. In response, Cardenas arrested her under the outstanding warrants and refused her pleas to change out of her swimming suit before leaving for the police station.

Overall, the investigation lasted several hours. After Morales was arrested for assault, Lechuga took him to a nearby Las Palmas medical facility where he was treated for a fractured eye socket, received four stitches on his chin, and with his consent, had blood drawn, which revealed blood alcohol levels just below the presumptive intoxication range. While awaiting trial on his assault charge, Morales was indicted for the felony charge of driving minor children while intoxicated on the day of the altercation. That felony indictment was later dismissed for insufficient evidence. A jury subsequently found Morales not guilty of assault.

Morales filed this § 1983 action against the Carrillos and Cardenas, alleging that they violated his due process rights by deliberately conspiring to frame and bring false charges against him. The district court denied Cardenas's motion for summary judgment on the basis of qualified immunity. Cardenas filed this interlocutory appeal. Because material factual disputes exist concerning qualified immunity, we dismiss for lack of appellate jurisdiction.

## II. Standard of Review

"The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine to the extent that it turns on an issue of law." *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004) (internal quotation omitted); *see also Winfrey v. Pikett*, 872 F.3d 640, 643 (5th Cir. 2017) ("The district court's denial of summary judgment is immediately appealable to the extent it turns on an issue of law." (internal quotation omitted)). Where the district court determines "that genuine issues of material fact preclude a determination of qualified immunity, we have jurisdiction only to address the legal question of whether the genuinely disputed factual issues are material for the purposes of summary judgment." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 408 (5th Cir. 2009).

We have no jurisdiction to consider the correctness of the plaintiff's version of the facts and cannot review the district court's factual determination that a genuine factual dispute exists. *See Michalik v. Hermann*, 422 F.3d 252, 257 (5th Cir. 2005) ("We have no jurisdiction to hear an interlocutory appeal . . . when a district court's denial of qualified immunity rests on the basis that genuine issues of material fact exist."). "Within this limited appellate jurisdiction," we review a "denial of a motion for summary judgment on the basis of qualified immunity in a § 1983 suit *de novo*." *Winfrey*, 872 F.3d at 644 (internal quotation omitted).

## III. Discussion

Our analysis begins and ends by addressing whether we have appellate jurisdiction over Cardenas's appeal. We hold that we lack jurisdiction over his appeal because it "boils down to a challenge of the genuineness, not the materiality, of factual disputes." *Id*. On appeal, Cardenas avers that he is entitled to summary judgment because the evidence the district court recounted was insufficient to support an inference that he entered into an agreement to frame Morales. Morales, on the other hand, contends that we lack jurisdiction to hear this appeal because Cardenas's arguments merely rest on factual disputes as opposed to addressing the legal issue of whether the district court erred as a matter of law. Morales has the better argument.

An order that resolves a fact-related dispute of the sufficiency of evidence is not immediately appealable and must await final judgment to be appealed. *See Cantu v. Rocha*, 77 F.3d 795, 802 (5th Cir. 1996). In the instant case, the district court identified many material facts as genuinely disputed. Specifically, the parties dispute: (1) which party was the initial instigator of the altercation, (2) whether Cardenas decided to take the Carrillos' side shortly after arriving on the scene or only after conducting a thorough investigation, (3) whether Cardenas directed Guereca to destroy his notes as

5

part of a conspiracy, and (4) whether Cardenas's tactics while interviewing Morales's family members and witnesses—Cardoza and Jaquez—are probative of his participation in a conspiracy. Cardenas's argument hinges on the factual disputes of this case being resolved in his favor. Notably, he does not assert that, taking all of Morales's factual allegations as true, no violation of a clearly established law was shown. Rather, Cardenas argues that he is entitled to summary judgment because the evidence the district court cited does not permit an inference that he entered into a conspiracy with the Carrillos to deprive Morales of his civil rights. But Cardenas's arguments only challenge the genuineness of the factual dispute.

The district court denied Cardenas's motion for summary judgment as to false charges because "a reasonable jury could find that the Carrillo Defendants were the initial aggressors and that [E.] Carrillo made false statements to the police in order to have Morales arrested and convicted of assault." We agree. Consequently, we lack jurisdiction to consider Cardenas's arguments regarding the genuineness of the district court's factual determinations. *Winfrey*, 872 F.3d at 644.

## IV. Conclusion

For the foregoing reasons, we DISMISS the appeal for lack of jurisdiction.